UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00076-HBB

PARRISH L. NEWTON                                                                          PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Parrish L. Newton seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Newton (DN 16) and Defendant (DN 17) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered August 31, 2018 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

FINDINGS OF FACT

Plaintiff filed an application for a period of disability and disability insurance benefits on August 14, 2014 (Tr. 286-310). Plaintiff alleged that she became disabled on November 23, 2010 as a result of high blood pressure, depression, and back problems (Tr. 329). Administrative Law Judge John R. Price ("ALJ") conducted a hearing on April 10, 2017 via video conference. Newton appeared in Bowling Green, KY and the ALJ presided from Louisville, KY. Newton was present and represented by Charles Burchett. Also present and testifying was Tina Stambaugh, an impartial vocational expert.

In a decision dated June 7, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 26, 2013, the alleged onset date (Tr. 17). At the second step, the ALJ determined that Plaintiff's borderline intellectual functioning, depression, degenerative disc disease with herniation status/post discectomy, degenerative joint disease knees and ankles, carpel tunnel/de Quervain's status/post surgeries of left wrist with tendonitis vs. arthritis, injury to right elbow, and obesity status/post lap band are "severe" impairments within the meaning of the regulations (Tr. 17). Notably, at the second step, the ALJ also determined that Plaintiff's history of UTI's, gallstones, and the removal of her gallbladder are "non-severe" impairments within the meaning of the regulations (Tr. 18). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Tr. 21). More specifically, the ALJ found that Plaintiff requires 30 minute sit stand intervals taking a minute or two to change position; no ladders, ropes, or scaffolds; only occasional ramps and stairs; occasional kneeling, stooping, crouching, and crawling; she is capable of simple routine work where there are no fast-paced production-rate demands; occasional (superficial) interaction with coworkers and supervisors and avoiding the general public (Tr. 21). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 29).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 29). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 29). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from February 26, 2013 through the date of the decision (Tr. 30).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 282-83). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Newton challenges the ALJ's finding with a single claim, arguing that the ALJ "committed reversible error by failing to elicit vocational expert testimony consistent with the findings of the adjudged Residual Functional Capacity (RFC)." Specifically, Newton contends that the ALJ's

hypothetical questions to the impartial vocational expert at the administrative hearing allows for a greater capacity for standing, walking, and lifting than the ALJ's RFC finding indicates.

The following exchange between the ALJ and vocational expert occurred at the administrative hearing:

> **ALJ**: Please assume an individual aged 36 to 42, with let's assume a limited education, and past work as described to you, and let's assume the individual can perform a limited range of sedentary work, lifting no more than 10 pounds maximum occasionally, five pounds frequently, with standing and walking two hours in an eight hour day, sitting six hours in an eight hour day, with an option to sit and stand at 30 minute intervals, taking a minute or two to change position, with no ladders, ropes, and scaffolds, only occasional ramps and stairs, and occasional stooping, kneeling, crouching, crawling, capable of simple, routine work where there are no fast-paced production related demands, maybe occasional superficial interaction with coworkers and supervisors, and let's just assume she should avoid the general public. With these limitations would such an individual be able to perform the past work this individual performed?
>
> **Vocational Expert**: No, your honor. That will eliminate the past work both as actually and generally performed.
>
> **ALJ**: Okay, will there be other work in the national economy such an individual could perform?
>
> **Vocational Expert**: Yes, your honor in my opinion it would be a limited range of other work at the sedentary exertional level. That would be unskilled.

(Tr. 70). The vocational expert went on to name several jobs a person with the proposed hypothetical limitations could perform including, factory helper (35,000 jobs nationally), hand packers (22,000 jobs nationally), inspectors and sorters (14,000 jobs nationally). Newton takes issue with this question because it inquires about an individual able to stand and walk two hours in an eight-hour day, sit six hours a day, with an option to sit and stand at 30-minute intervals.

6

Newton argues the question is inconsistent with the ALJ's finding that she is capable of sitting for at least four hours a day during the majority of the work day (DN 16 PageID # 1209).

A full range of sedentary work includes lifting no more than 10 pounds at a time, occasionally lifting items commonly found in work environments such as docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a); 416.967(a). Occasional standing and walking is also required. Id. In this context, occasional means occurring up to one-third of the time, or two hours in an eight-hour workday. Social Security Ruling 96-9p. Here, the ALJ's RFC finding indicates Newton can perform sedentary work that allowed Newton to stand for up to 30-minute intervals before sitting down again (Tr. 21). As stated by the Commissioner, this does not require Newton to alternate sitting and standing every 30 minutes, it merely gives her the option to do so as needed.[1] Thus, the ALJ's RFC finding, his hypothetical posed to the vocational expert, and his reliance on the vocational expert's testimony are not inconsistent.

Newton also challenges the ALJ's hypothetical question regarding lifting requirements. As can be seen in the above block quotation, the hypothetical question allowed for lifting "no more than 10 pounds maximum occasionally, five pounds frequently" (Tr. 70). This is a more strenuous lifting requirement than allowed by the regulations. Sedentary work may only involve lifting "no more than 10 pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. The ALJ found that Newton was capable of completing sedentary work, as defined in the regulations, based on the vocational expert's responses to his

---

1 The ALJ appears to have inadvertently omitted the word "option" from his opinion (Tr. 21). However, both parties agree that the word should appear. See DN 16 PageID # 1309, fn 1 (Plaintiff); DN 17 PageID # 1317, fn 3 (Defendant).

hypothetical questions. However, Newton argues because the vocational expert responded to the ALJ's erroneous question with overly strenuous lifting requirements, there is no evidentiary basis for the ALJ to conclude that Newton can perform sedentary work (DN 16 PageID # 1310).

While the undersigned agrees that the ALJ's hypothetical question was erroneous, any error committed was harmless. Despite the ALJ's flawed question, it is clear the vocational expert testified that Newton is capable of performing sedentary work. The vocational expert identified three jobs (factory helper, hand packer, and inspectors and sorters) that Newton could perform. The vocational expert went on to explicitly describe these occupations as "rated sedentary in the Dictionary of Occupations Titles. These are all unskilled jobs with SVP's of 2." He reiterated that each job is classified as sedentary when describing them individually later in his testimony. (Tr. 70-71). An error is harmless if the record is fully developed as to all factual issues essential to the decision and there is no substantial doubt that the agency would have made the same ultimate finding with the erroneous, subsidiary finding removed. Pechatsko v. Comm'r of Soc. Sec., 369 F. Supp. 2d 909 (N.D. Ohio 2004). Despite the flawed premise of his question, the ALJ appropriately based his RFC finding on the vocational expert's testimony that Newton is capable of completing sedentary work. The error does not require remand.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

May 24, 2019

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel